IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANNABEL DOBBS, individually and as | ) | |
| Personal Representative of the Estate of | ) | |
| TERRY DOBBS, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-04-1762-D |
| | ) | |
| WYETH PHARMACEUTICALS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Wyeth Pharmaceuticals' Motion for Partial Summary Judgment Based on Federal Preemption or, in the Alternative, Based on State Law [Doc. No. 113]. Plaintiff Annabel Dobbs has timely responded to the motion, and Wyeth has filed a reply in support of the motion. The parties have also filed supplemental briefs in support of their respective arguments, and have submitted extensive exhibits.

I. Introduction:

In this action, Plaintiff seeks damages resulting from the tragic death of her husband, Terry Dobbs, who committed suicide in December, 2002. Plaintiff alleges that Mr. Dobbs, who had been diagnosed with depression, committed suicide as a result of taking Effexor, a prescription antidepressant drug manufactured by Defendant. Plaintiff contends that Defendant is liable under Oklahoma common law for failing to adequately warn that Effexor could cause suicide; she asserts tort claims based on strict liability for failure to warn, negligent failure to warn, and misrepresentation.

In its motion for partial summary judgment, Defendant argues that it is entitled to judgment as a matter of law on the failure to warn claims because such claims are preempted by federal law

consisting of United States Food and Drug Administration ("FDA") regulations regarding the content of warnings contained in labeling accompanying prescription drugs. In summary, Defendant contends that it was required to comply with the FDA regulations regarding the content of Effexor's labeling and that the FDA had concluded, as of the time of Mr. Dobbs' death in 2002, that the warning now sought by Plaintiff in this case was not supported by scientific evidence. Defendant further argues that the FDA at that time would not have approved the warning sought by Plaintiff and that Defendant could have been subjected to regulatory action for unlawful misbranding if it had altered its labeling to include that warning. As a result, Defendant argues, the FDA regulations preempt Oklahoma's tort law regarding failure to warn. Defendant further argues that, if the Court concludes that the state tort claims are not preempted, it is entitled to judgment because the undisputed facts establish Plaintiff cannot, as a matter of law, prove the requisite element of causation in this case.

Plaintiff argues that the FDA regulations do not preempt state law because Defendant faced no conflict in complying with those regulations and its common-law duty to warn. According to Plaintiff, the FDA regulations authorized Defendant to alter its labeling for Effexor prior to Mr. Dobbs' suicide and the regulations, in fact, acknowledge a drug manufacturer's obligation to make such changes when the manufacturer obtains evidence of a previously unknown risk after the drug is approved. With respect to Defendant's alternative causation argument, Plaintiff contends that material factual disputes preclude summary judgment on that issue.

II. Summary Judgment Standard:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986).  A material fact is one which may affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for her.  *Id.*  The facts and reasonable inferences therefrom must be viewed in the light most favorable to the plaintiff.  MacKenzie v. City & County of Denver, 414 F.3d 1266, 1273 (10th Cir. 2005).       Where the summary judgment movant argues that a state law claim is preempted by federal law, determination of material facts is not necessary, as the motion presents only a legal question.  Watters v. Wachovia Bank, N.A., ___U.S. ___, 127 S.Ct. 1559, 1566 (2007);   Dobbs v. Anthem Blue Cross & Blue Shield, 475 F.3d 1176, 1177 (10th Cir. 2007). Thus, summary judgment is appropriate as to a claim which  a court determines is preempted. *Id.*

In this case, the parties do not dispute that Mr. Dobbs committed suicide in December 2002 after having taken Effexor for several days; at the time of his death, he was 53 years old.  It is also not disputed that Mr. Dobbs had seen a physician in December 2002 to inquire about medication for anxiety.  At the time, Mr. Dobbs had encountered both health and financial problems;  he told the physician, Douglas Brandt, D.O., that he was experiencing serious anxiety and depression.  Dr. Brandt diagnosed Mr. Dobbs as "fairly severely depressed," and he  prescribed Lexapro, an antidepressant.   Because Mr. Dobbs' condition  did not improve,  he again sought treatment.  A different physician, Martha Speed, D.O., examined him and confirmed the diagnosis of depression. Dr. Speed told Mr. Dobbs to stop taking Lexapro, wait one day, and then begin taking Effexor.  A few days after he began taking Effexor, Mr. Dobbs committed suicide.  Plaintiff contends that Mr.

Dobbs committed suicide because he took Effexor[1].

III.  Preemption:

Because the Court's ruling on preemption may render Defendant's alternative argument moot, the Court will first consider Defendant's contention that FDA regulations preempt Plaintiff's state law tort claims.

Federal preemption of state laws is derived from the Supremacy Clause of the United States Constitution; if federal and state laws conflict, the federal law preempts the state law.  U.S. Const. art. VI, cl. 2.  The Supreme Court has recognized three types of preemption:  1) "express preemption," which exists when  Congress has expressly stated that a federal law will preempt state law, *see* English v. General Electric Co., 496 U.S. 72, 78-79 (1990);  2) "field preemption," which occurs  when  Congress has expressed its intent that federal law will exclusively occupy an entire field of regulation, *Id.*; and 3) "conflict preemption," which arises when "it is either impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Sprietsma v. Mercury Marine, 537 U.S. 51, 64 (2002).  *See also* Crosby v. National Foreign Trade Council, 530 U.S. 363, 372 (2000).    In this case, the parties agree that the only  potentially applicable basis for preemption is conflict preemption.

Conflict  preemption can apply to both state statutes and common law tort obligations. Geier v. American Honda Motor Co. Inc. , 529 U.S. 861, 873 (2000); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 521 (1992).   The conflict is not required to stem directly from the language of

---

[1] *Plaintiff also asserts a claim that Mr. Dobbs' suicide was caused by Lexapro, which is manufactured by Forest Laboratories.  Plaintiff's claims against Forest Laboratories have been referred to the Judicial Panel on Multidistrict Litigation and are not addressed herein.*

a federal statute, as agency regulations promulgated pursuant to federal statutory authority "have no less pre-emptive effect than federal statutes." <u>Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta</u>, 458 U.S. 141, 153 (1982). Furthermore, a federal agency "acting within the scope of its congressionally delegated authority may pre-empt state regulation." <u>Louisiana Public Serv. Comm'n v. FCC</u>, 476 U.S. 355, 369 (1986). There is, however, a general presumption that Congress does not intend to displace state law; thus, conflict preemption applies only if the need for it is clear. <u>Geier</u>, 529 U.S. at 885. "[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly preempt state-law causes of action." <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 485(1996). Therefore, conflict preemption will be found only if the need for it is clear, as "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." <u>Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.</u>, 507 U.S. 218, 224(1993). However, the Supreme Court has also held that a "pre-emptive regulation's force does not depend on express congressional intent to displace state law" and that a "narrow focus" on Congress's intent to supersede state law is "misdirected." <u>Fidelity Fed. Sav.</u>, 458 U.S. at 154.

The degree of deference to be afforded an agency's interpretation of the preemptive effect of its own regulations has been the subject of numerous Supreme Court decisions. An agency's interpretation is entitled to "substantial deference," commonly known as "<u>Chevron</u> deference," only where Congress has delegated authority to the agency generally to make rules carrying the force of law, and the agency interpretation claiming deference was promulgated in the exercise of that authority. <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226-27 (2001); <u>Chevron USA, Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984). The Supreme Court has also recognized a

level of deference applicable to an agency's interpretation of its regulation where the language of the regulation is ambiguous.  <u>Auer v. Robbins</u>, 519 U.S. 452, 461 (1997).   A third and less deferential standard applies where the agency interpretation of its regulation lacks the Congressional authority required for <u>Chevron</u> deference and does not involve an ambiguous regulation; in such cases, the agency's "rulings, interpretations and opinions" are not controlling upon the courts, but "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944); *see also* <u>Mead</u>, 533 U.S. at 228.  "The weight of such a judgment in a particular case will depend on the thoroughness evident in its consideration, the validity in its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." <u>Skidmore</u>, 323 U.S. at 140.

Recent Supreme Court decisions have applied more specific guidelines governing the weight to be afford an agency's determination regarding the preemptive effect of its regulations. In determining whether an agency regulation preempts state law, courts should afford weight to the opinion of the federal agency responsible for the regulation at issue, as that agency is "often better able than are courts" to determine whether general state tort liability rules are helpful or counterproductive to the substantive goal of the regulations. <u>Bates v. Dow Agrosciences LLC</u>, 544 U.S. 431, 455 (2005) (Breyer, J., concurring).  Where the agency has expressed its belief that a state law or tort action would conflict with the agency's regulations, that view, while not controlling, must be considered:

> We place some weight upon [the agency's] interpretation of [its regulation's] objectives and its conclusion...that a tort suit such as this one would "stand as an obstacle to the accomplishment and execution" of those objectives.  Congress has delegated to [the agency] authority to implement the statue; the subject matter is technical; and the relevant history and background are complex and extensive.  The agency is likely to have a thorough understanding of its own regulation and its objectives and is "uniquely qualified" to comprehend the likely impact of state requirements...in these circumstances, the agency's own views should make a difference.

Geier[2], 529 U.S. at 883 (*citations omitted*).  "[I]n the absence of a clear congressional command as to pre-emption, courts may infer that the relevant administrative agency possesses a degree of leeway to determine which rules, regulations, or other administrative actions will have pre-emptive effect."  Medtronic, 518 U.S. at  505-06  (Breyer, J., concurring).   Where the agency has not expressed an intent to preempt state law, the courts should "seldom infer, solely from the comprehensiveness of federal regulations, an intent to pre-empt."  Hillsborough County, Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 707, 718 (1985).   To determine whether  the agency has expressed an intent to preempt, courts should consider the agency's statements contained in "regulations, preambles, interpretive statements, and responses to comments."  Medtronic, 518 U.S. at 505-06 (Breyer, J., concurring), *citing* Hillsborough County, 471 U.S. at 718.

 To evaluate the parties' respective arguments regarding preemption in this case, it is thus necessary to consider the scope of the FDA's regulatory authority relevant to the issues in this case, the regulatory background regarding  FDA consideration of labeling requirements for Effexor and other antidepressants, and the FDA's expressed position with regard to preemption as applied to the facts of this case.

---

[2]*In Geier, the Court held that a state tort action was preempted by U. S. Department of Transportation regulations governing vehicle air bags; although there was no express preemption, the Court concluded that conflict preemption existed.  Id. at 885-86.*

A.  FDA Regulatory Authority:

Congress has granted to the FDA broad authority to regulate the prescription drug market and has charged it with ensuring that drugs are safe and effective by conducting reviewing clinical research.  *See, e.g,* 21 U. S. C. § § 393(b)(1) and 393(b)(2)(B).   The FDA is responsible for enforcing the federal Food, Drug and Cosmetic Act; one of its regulatory duties is the review and approval of new drugs and accompanying labels. 21 U. S. C. § 355(b)(1).  Specifically applicable to this case are the FDA's regulations regarding the warnings section to be included in the labeling accompanying an approved drug.   FDA regulations mandate the inclusion of a warning section which "must describe clinically significant adverse reactions." 21 C. F. R.  §201.57(c)(6)(i). These include reactions that are potentially fatal, are serious even if infrequent, or those which can be prevented or mitigated through appropriate use of the drug in question.  *Id.*

After a drug is approved by the FDA, manufacturers are required to maintain records, conduct additional testing as directed, and report to the FDA any significant adverse health consequences reported during the prescription drug's use.   21 U.S.C. §355(k)(1); 21 C.F.R. §§314.80 and 314.81.  The FDA is statutorily responsible for continually monitoring the safety of approved drugs and is authorized to take actions including, *inter alia,* withdrawal of approval if scientific data indicates the drug is unsafe. 21 U. S. C. § 355(e).  Approval must be withdrawn if the FDA finds that "clinical or other experience, tests or other scientific data show that such drug is unsafe for use;" approval must also be withdrawn where the FDA determines, "on the basis of new information," that the labeling for a drug "is false or misleading in any particular." *Id.*

In addition to the FDA's statutory duties to monitor labeling, manufacturers are authorized by regulation to make certain changes to their labels.   They may submit a "Prior Approval

Supplemental" new drug application which requires FDA approval before a requested label change can be made. 21 C. F. R. §314.70(b). Alternatively, they may submit a "Changes Being Effected" supplement, which allows the manufacturer to make the change and begin using a new label while simultaneously seeking FDA approval for the revised label. 21 C. F. R. § 314.70(c)(6)(iii). Changes Being Effected supplements can include label changes to add or strengthen a contraindication, warning, precaution, or adverse reaction. 21 C. F. R. § 314.70(c)(6)(iii)(A). The FDA regulations governing labeling contents also provide that "labeling must be revised to include a warning about a clinically significant hazard as soon as there is reasonable evidence of an association with a drug;" a causal relationship need not have been definitely established. 21 C.F.R. §201.57(c)(6)(i).

The FDA regulations also prohibit "misbranding" of drugs. The FDA considers a drug to be misbranded if its labeling is false or misleading in any particular or if the labeling does not provide adequate warnings against any use that is dangerous to health. 21 U.S.C. §§352(a), (f), (j); 21 U. S. C. §321(n). A drug is deemed misbranded under §352(j) "'if it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.'" <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 135 (2000), *quoting* 21 U. S. C. §352(j). A drug is also misbranded unless its labeling bears adequate directions for use "'...in such manner and form, as are necessary for the protection of users,' except where such directions are 'not necessary for the protection of the public health.'" *Id., quoting* 21 U.S.C. § 352(f)(1). The sale or transport of misbranded drugs in interstate commerce is prohibited. 21 U.S.C. §§331(a),(b), and (k). A violation of this prohibition subjects a manufacturer to potential actions including an injunction, criminal prosecution, potential imprisonment or fine, or seizure of

the drug.  21 U.S.C. §§332, 333(a), 334(a).

In this case, Plaintiff contends that there is no conflict preemption because Defendant was authorized by the FDA regulations to alter the label and packaging for Effexor to include a warning that it could cause suicidality in adult patients.  According to Plaintiff, Defendant's  ability to do so under 21 C. F. R.  §314.70(c)(6)(iii) negates any contention that it could not comply with a common law duty to warn of suicidality because the FDA did not prevent Defendant from adding that warning after the initial approval of Effexor and its accompanying labeling information.  Defendant argues, however, that even if it had sufficient scientific information on which to base the addition of such warning on its label prior to Mr. Dobbs' 2002 suicide, it could not lawfully do so at the time because the FDA had expressly rejected the propriety of including a suicidality warning on labels for Effexor and similar antidepressant medications.  Thus, Defendant argues, it faced a conflict in complying with the FDA regulations and Plaintiff's interpretation of Oklahoma common law tort obligations, and that the FDA's position on preemption is entitled to deference.

B. FDA Regulatory History Regarding Antidepressants:

Understanding the parties' arguments requires an examination of the history of the FDA's consideration of the proper warnings to include on labels and package inserts for Effexor and similar antidepressants.   The parties agree that Effexor is one of a class of drugs known as Selective Serotonin Reuptake Inhibitors ("SSRIs"), which are prescribed for the treatment of depression and other conditions. Similar drugs within the SSRI class include,, *inter alia*,  Paxil, Zoloft, and Prozac.

When approved by the FDA, Effexor's label contained a suicide precaution which the FDA required of all antidepressants; that precaution stated in pertinent part:

> Suicide - The possibility of a suicide attempt is inherent in depression and may persist until significant remission occurs. Close supervision of high risk patients should accompany initial drug therapy. Prescriptions for Effexor should be written for the smallest quantity of tablets consistent with good patient management in order to reduce the risk of overdose.

2002 Effexor Package Insert, Defendant's Exhibit 1 to Brief in Support of Motion for Partial Summary Judgment ("Defendant's Ex."), p. 10; Defendant's Ex. 2, p. 8. The labeling reported that some patients in clinical trials experienced intentional injury or attempted suicide, and reported suicidal ideation. Defendant's Ex. 1, pp. 23-24; Defendant's Ex. 2, p. 20.

As Defendant points out, prior to 2002, the FDA had considered several citizen petitions seeking withdrawal of antidepressants because the drugs allegedly caused suicide or created a greater risk of suicide than indicated by the labeling warnings. In 1990, a citizen petition sought withdrawal of FDA approval of Prozac. Denying that petition, the FDA stated that the data and information did not indicate that Prozac causes suicidality; however, the FDA determined that the issue should be thoroughly examined, and it convened a meeting of the Psychopharmacological Drugs Advisory Committee of the FDA to consider the issue of suicidality associated with all antidepressants. *See* FDA Letter of July 26, 1991, Defendant's Ex. 4.

Another citizen petition had been filed in May, 1991; it asked the FDA to require a "boxed warning" on Prozac prescriptions to state that Prozac had been associated with intense, violent suicidal preoccupation, agitation, and impulsivity in a small minority of patients. In September, 1991 the FDA Psychopharmacological Drugs Advisory Committee met to consider evidence regarding antidepressants and suicidality. A partial transcript of the meeting is submitted as Defendant's Ex. 6. The Committee concluded that the evidence did not support a determination that the evidence warranted requiring a warning regarding the use of Prozac and suicidality. Defendant's

Ex. 6, pp. 126, 129.  The committee unanimously voted against a finding that there was "credible evidence to support a conclusion that antidepressant drugs cause the emergence and/or intensification of suicidal thoughts and acts and/or other violent behaviors."  *Id.* at 294.  The Committee also concluded that there was no evidence "to indicate that a particular drug or drug class poses a greater risk for the emergence and/or intensification of suicidal thoughts and acts and/or other violent behaviors."  Defendant's Ex. 6, p. 302.  The Committee determined that no labeling change should be required for antidepressants.  Defendant's Ex. 6, p. 331.  As a result, the FDA denied the citizens' petitions.  The FDA also stated that it would continue to evaluate information regarding the use of antidepressants and suicidality.

In 1997, the FDA received another citizen petition regarding Prozac; it asked the FDA to require warnings indicating that people who are considered at risk for suicide and who take Prozac should be carefully observed and should also consider taking a sedative.  Defendant's Ex. 7.  The FDA again denied the petition, discussing its previous conclusions and stating:

> The agency has continued to monitor carefully reports of a possible connection between Prozac and increased suicidality.  However, no credible scientific evidence has caused the agency to depart from its conclusion that the current Prozac labeling appropriately reflects the level of concern about Prozac and suicidality.

*Id.*, p. 2.

Prior to Mr. Dobbs' December 2002 use of Effexor,  the FDA continued to evaluate new drug applications and supplemental new drug applications for antidepressants, including Effexor, Lexapro, Paxil, Zoloft, and Celexa.  *See* FDA approval letters and documents submitted as Defendant's Ex. 8.  Defendant also submits evidence showing that, at meetings of the FDA's Psychopharmacological Drugs Advisory Committee (the "Committee") related to Effexor's New Drug Application in 1993, Dr. James Knudson of the FDA reported that the FDA had studied the

12

possibility of a relationship between Effexor and suicidality and that the several analyses or strategies employed did not reveal a greater risk of suicidality for Effexor. *See* partial transcript of April 30, 1993 Committee meeting, Defendant's Ex. 10, p. 51. In subsequent years, the FDA continued this evaluation. At a 2004 Committee meeting, the Director of the Division of Psychiatry Products for the FDA Center for Drug Evaluation and Research testified that, in connection with the new drug applications for antidepressants prior to that date, there had not been a "signal for excess suicidality, either looking at event data or looking at item data." Testimony of Dr. Thomas Laughren, September 13, 2004 Committee meeting, pp. 187-88, submitted as Defendant's Ex. 11.

Defendant also points out that, in several *amicus curiae* briefs filed by the FDA since September 2002, the FDA stated that it had found no credible evidence to support a risk of suicide in adults resulting from antidepressants and that, had such a warning been requested by a manufacturer, it would have been rejected by FDA as lacking a sufficient scientific basis. *See* Brief of the United States as *Amicus Curiae* Supporting Defendant, Kallas v. Pfizer, Inc., 2005 WL 4030146 (D. Utah Sept. 29, 2005); Brief of the United States as *Amicus Curiae* Supporting Defendant, Motus v. Pfizer, Inc., 2002 WL 32303084 (9th Cir. Sept. 10, 2002). Copies of these briefs are submitted as Defendant's Exhibits 12 and 13, respectively. More recently, the FDA again discussed its findings regarding antidepressants in an *amicus* brief supporting the defendant in Colacicco v. Apotex, Inc., 432 F. Supp. 2d 514 (E. D. Pa. 2006); a copy of that brief is submitted as Defendant's Ex. 14. In the *amicus* brief in Colacicco, the FDA stated that, prior to the October 2003 suicide at issue in that case, it "had repeatedly determined, based on its scientific analysis of available information, that there was inadequate evidence of an association between use of Paxil or

13

other SSRIs by adult patients and a risk of suicide or suicidality to support a specific warning in the 'Precautions' section of the drug's labeling." Defendant's Ex. 14, pp. 7-8. Defendant also notes that, in an *amicus* brief filed in the appeal of the <u>Colacicco</u> trial court's decision, the FDA reiterated its position that the "FDA's scientific judgment in October 2003 was that there was no reasonable evidence available at that time of an association between adult use of the drug [generic form of Paxil] and suicide or suicidality." Brief of the United States as *Amicus Curiae* Supporting Defendant-Appellees, <u>Colacicco v. Apotex, Inc.</u>, No. 06-3107 (3d Cir.), Defendant's Ex. 15, p. 16. The FDA added that, " [t]o include on a drug's label a warning about a drug's effects, when FDA has specifically determined that such a warning is not based on reliable scientific evidence, would be 'false and misleading,' 21 U. S. C. § § 352(a),(f), and would constitute unlawful misbranding. 21 U. S. C. § 331(a),(b), and(k)." *Id.*

As Defendant points out, the evidence establishes that, at the time Mr. Dobbs took the SSRI antidepressant Effexor, the FDA had concluded there was no credible evidence that a link existed between adult use of antidepressants and suicidality or an increased risk of suicide. The FDA also stated its position that the inclusion of such a warning at that time would have been false and misleading and would have resulted in unlawful misbranding[3]. Defendant's Ex. 15, p. 16.

The history of the FDA's evaluation of the link between antidepressants and suicidality also shows that the agency has continued to monitor scientific evidence and, as a result, issued a 2005 requirement that labeling include a "black box" pediatric suicide-related warning to antidepressant

---

[3]*Plaintiff does not dispute that these positions were taken by the FDA; however, she contends in this lawsuit that the evidence on which those positions was based is faulty and that there was, in fact, credible scientific evidence to support the inclusion of such a warning. For purposes of this motion, however, the issue is whether the FDA's regulations preempt that claim. Because the FDA has taken the position that its regulations regarding labeling have preemptive effect, its historical application of labeling warnings regarding antidepressants is important to evaluating the application of preemption in this case.*

drug labeling, including Effexor's labeling.  The warning notes an increased "risk of suicidal thinking and behavior (suicidality) in short-term studies in children and adolescents with Major Depressive Disorder (MDD) and other psychiatric disorders."  *See* Effexor labels submitted as Defendant's Ex. 21, p. 1; Ex. 22, p. 1.  In 2007, the FDA required a new "black box" suicide-related warning to be added to antidepressant drugs, including Effexor; that warning notes a risk "of suicidal thinking and behavior (suicidality) in children, adolescents, and young adults in short-term studies of Major Depressive Disorder (MDD) and other psychiatric disorders;"  however, it also states that "[s]hort term studies did not show an increase in the risk of suicidality with antidepressants compared to placebo in adults beyond age 24."  *See* Defendant's Ex. 23, p. 1.

These warnings were not in effect when Mr. Dobbs took Effexor in 2002. Defendant argues that, because of the FDA's 2002 position that such warnings were not justified by scientific evidence,  inclusion of  the warning which Plaintiff claims should have been given in 2002 would have been considered misbranding in violation of FDA regulations.  Thus, Defendant contends,  the FDA regulations and Plaintiff's alleged common law duty to warn are in conflict.  As a result, Defendant contends that the FDA regulations preempt the state law tort claims.  It argues  the FDA has expressly taken the position that its own regulations regarding drug labeling preempt state law tort claims regarding a drug manufacturer's duty to warn.  Plaintiff argues that the FDA's position does not support preemption and that this Court should not give deference to that position.

C. FDA Position Regarding Preemption:

On January 24, 2006, the FDA issued a final rule entitled, "Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products." 71 Fed. Reg. 3922 (Jan. 24, 2006)(the "Final Rule").   In the Preamble to the Final Rule,  the FDA expressly stated its

position that state law tort actions conflict with the FDA regulations if they are based on allegations that a drug manufacturer failed to include in a drug's labeling information a proper warning regarding the risks associated with the drug.  According to the FDA:

> FDA believes that State laws conflict with and stand as an obstacle to achievement of the full objectives and purposes of Federal law when they purport to compel a firm to include in labeling or advertising a statement that FDA has considered and found scientifically unsubstantiated.  In such cases, including the statement in labeling or advertising would render the drug misbranded under the act (21 U.S.C. § 352(a) and (f)).

71 Fed. Reg. at 3935.

In the Preamble, the FDA acknowledges its responsibility to evaluate drugs and insure their safety, as well as its expertise in dealing with issues related to new drugs and the evaluation of risks and hazards associated with drugs.  The Preamble also explains the FDA's belief that state law actions regarding label warnings create risks that a judge or jury will reach a decision which causes a manufacturer to include on a label information that has not been approved by the FDA or has been rejected by the FDA as not supported by scientific evidence:

> State law actions also threaten FDA's statutorily prescribed role as the expert Federal agency responsible for evaluating and regulating drugs. State actions are not characterized by centralized expert evaluation of drug regulatory issues. Instead, they encourage, and in fact require, lay judges and juries to second-guess the assessment of benefits versus risks of a specific drug to the general public--the central role of FDA--sometimes on behalf of a single individual or group of individuals. That individualized reevaluation of the benefits and risks of a product can result in relief--including the threat of significant damage awards or penalties--that creates pressure on manufacturers to attempt to add warnings that FDA has neither approved nor found to be scientifically required. This could encourage manufacturers to propose "defensive labeling" to avoid State liability, which, if implemented, could result in scientifically unsubstantiated warnings and underutilization of beneficial treatments.

71 Fed. Reg. at 3935.   The FDA also explained that it found it necessary to include an express

statement of its opinion that state actions are preempted because a number of court decisions had held that FDA regulations did not have a preemptive effect.  Those decisions, cited in the Preamble, were based on the courts' interpretation that  the FDA labeling regulations establish only minimum requirements.   As a result, the courts found that manufacturers were obligated to exceed those requirements where they had new evidence of additional risks or dangers not initially included in the FDA-approved labels and materials accompanying an approved drug.  71 Fed. Reg. at 3934-35. Such decisions have rejected preemption in state law failure-to-warn cases because of the courts' belief that a "manufacturer has latitude under FDA regulations to revise labeling by adding or strengthening warnings statements without first obtaining permission from  FDA."  71 Fed. Reg. at 3934 (citations omitted).   Those courts have also opined that FDA labeling requirements represent a "minimum safety standard."  *Id.*

According to the  FDA,  these interpretations are incorrect because the FDA regulations do not constitute minimum requirements, but  "establish both 'a floor' and a 'ceiling'" for drug labeling content.  71 Fed. Reg. at 3935.  As the FDA explained, the Code of Federal Regulations allows a manufacturer to alter its label prior to seeking FDA approval of the alteration if the manufacturer has new scientific evidence of previously unknown risks.   *See* 21 C.F.R. §314.70.  However, the FDA noted that such changes are ultimately subject to FDA approval; specifically, the FDA can bring an enforcement action if the added information makes the labeling false or misleading under the Act. 71 Fed. Reg. at 3934, *citing* 21 U. S. C. § 352.  According to the FDA, "[t]hus, in practice, manufacturers typically consult with the FDA prior to adding risk information to labeling."  *Id.* As the FDA emphasized, " [i]n fact, the determination whether labeling revisions are necessary is, in the end, squarely and solely FDA's under the act."  71 Fed. Reg. at 3934.

According to the FDA, to permit state tort actions regarding inadequate warning claims creates a risk that, to avoid state tort liability, manufacturers will alter their warnings to exaggerate risks so as to avoid liability; doing so could, according to the FDA, "discourage appropriate use of a beneficial drug." 71 Fed. Reg. at 3935.  The FDA also expressed concern that state law warning claims can lead to "overwarning," which also has a negative impact on patient safety and public health: "[L]abeling that includes theoretical hazards not well-grounded in scientific evidence can cause meaningful risk information to lose its significance." *Id.*   A product with too many warnings can result in the significant contraindications and side effects being overshadowed.  71 Fed. Reg. at 3935.   Furthermore, the FDA believes that state law inadequate warning claims undermine the "FDA's statutorily prescribed role as the expert Federal agency responsible for evaluating and regulating drugs." 71 Fed. Reg. at 3935.

In this case, Defendant argues that the Preamble must be given deference by this Court and should result in the conclusion that Plaintiff's state law claims are impliedly preempted by FDA regulations.  Plaintiff argues that the Preamble is not entitled to <u>Chevron</u> deference, but is entitled to very limited weight under the <u>Skidmore</u> standard  because it represents a change in the previous view of the FDA regarding preemption and is not a reasonable interpretation of the regulations. Furthermore, Plaintiff notes that several court decisions have rejected the Preamble as mandating a finding of preemption.

Defendant further argues that the FDA's  intent regarding preemption has been expressed not only in the 2006 Preamble but also in numerous *amicus curiae* briefs filed in litigation involving state tort claims against drug manufacturers and others subject to labeling or warning regulations promulgated by the FDA.  *See, e.g.,* Brief for the United States as *Amicus Curiae* Supporting

Defendants, <u>Colacicco v. Apotex</u>, 432 F. Supp. 2d 514, 519 ( E. D. Pa. 2006)(arguing that FDA prescription labeling regulations impliedly preempted state failure-to warn claims in a case alleging that the plaintiff's decedent had committed suicide after taking the SSRI Paxil; FDA argued that plaintiff's claim that the defendant should have included a warning of the link between suicide and SSRIs was contrary to FDA's own evaluation and conclusion that scientific evidence did not support such link and that requiring a label warning would have resulted in misbranding of the drug in violation of the law);  Brief for United States as *Amicus Curiae* Supporting Defendant, <u>Kallas v. Pfizer, Inc.</u>, 2005 WL 4030146  (D. Utah Sept. 29, 2005) (FDA argued that plaintiff's failure-to-warn claims were preempted because the FDA lacked reasonable evidence of an association between SSRIs and suicidality in children at the relevant time, thereby arguing that the proposed warning would result in prohibited misbranding of Zoloft); Brief for the United States as *Amicus Curiae* Supporting Defendant, <u>Motus v. Pfizer, Inc.</u>, 2002 WL 32303084 (9th Cir. Sept. 10, 2002) (FDA argued that plaintiff's failure-to-warn case was preempted because, prior to the decedent's suicide, the FDA had considered and rejected claims that SSRIs were linked to suicidal behavior; thus, the FDA argued a warning label incorporating a warning that such link existed would have been false and misleading, resulting in misbranding).

Plaintiff contends, however, that the FDA's position  has changed and is inconsistent with its prior expressed view that FDA regulations do not preempt state law.  Plaintiff correctly notes that, in 2000, the FDA's position regarding preemption was directly contrary to its current view. In an initial Notice of Proposed Rulemaking published in the Federal Register, the FDA proposed revisions to prescription drug labeling regulations and stated that it "has determined that this proposed rule does not contain policies that have federalism implications or that preempt State law."

65 Fed. Reg. 81082, 81103 (Dec. 22, 2000).  In a 1998 final regulation on Patient Medication Guides provided directly to patients, the FDA stated that "[F]ederal preemption could unduly interfere with the goals and objectives of existing State programs...This final rule is intended to complement these State efforts, not replace or hinder them."  63 Fed. Reg. 66378, 66384 (Dec. 1, 1998).  Nevertheless, since 2000 the FDA's position that state law failure-to-warn claims are preempted has been consistently stated.  *See, e.g.,* Colacicco, 432 F. Supp. 2d at 531-532.

When considering the deference to be afford the Preamble position on preemption, the courts have not been in agreement. Several courts have concluded that the FDA's change in position is not significant and that the 2006 FDA Preamble is entitled to deference.  *See, e.g.,* Tucker v. SmithKline Beecham Corp., 2007 WL 2726259 ( S. D. Ind. Sept. 19, 2007);  Sykes v. Glaxo-SmithKline, 484 F. Supp. 2d 289, 315-16 (E.D. Pa. 2007);  Colacicco, 432 F. Supp. 2d at 531-32; In re Bextra & Celebrex Marketing Sales Practices & Prod. Liab. Litig, MDL 1699 , 2006 WL 2374742, at *8 (N.D. Cal. Aug. 16, 2006).   Other courts, considering essentially the same arguments, have held that the 2006 Preamble position is not entitled to deference. *See, e.g.,* In re Vioxx Products Liability Litigation, 501 F. Supp. 2d 776, 785 ( E.D. La. 2007);   In re Zyprexa Products Liability Litigation, 489 F. Supp. 2d 230, 273-274  (E. D. N. Y. 2007); McNellis v. Pfizer, 2006 WL 2819046 (D. N.J. Sept. 29, 2006)[4].  The Tenth Circuit Court of Appeals has not considered the issue[5].

_____

[4]*While the cited decisions do not include all cases in which this issue has been considered, the Court notes them as representative of the two views expressed regarding the level of deference to be afforded the FDA's 2006 statement in the Preamble.  The Court has not attempted to discern a majority view; however, the Court notes that McNellis recognized the split in authority and observed that the court in  another decision in the same circuit, Colacicco, had reached the opposite conclusion.  See also McDonald v. Novartis Pharmaceuticals Corp., 2007 WL 4191750 (D.N. J. Nov. 20, 2007)(noting the split in authority, the same court which had decided McNellis stayed McDonald pending the outcome of appeals in McNellis and Colacicco).*

[5]*Although Plaintiff correctly notes that the Circuit rejected a preemption argument in Graham v. Wyeth Laboratories, 906 F.2d 1399 (10th Cir. 1990), the Court finds that decision distinguishable from this case.  The case involved an allegation of defective manufacture of DTP vaccine. In a motion for  judgment notwithstanding the verdict,*

The Court has carefully considered these and other decisions addressing the issue of FDA preemption of state laws related to warning labels.  Although it is apparent that preemption is an issue on which courts are not in agreement, this Court finds most persuasive the analysis and conclusions of the courts which have found that the FDA Preamble and other statements since 2000 are entitled to considerable deference. Although the  FDA's position regarding preemption since 2000 conflicts with its prior view, the change in position does not require this Court to disregard the FDA's current position.  "[A]lthough consistency of an administrative agency's position is a factor, as <u>Chevron</u> made clear, there is no longer any justification for not giving deference to an agency's interpretation of law merely because it is not the agency's longstanding position." <u>Colacicco</u>, 432 F. Supp. 2d 514, 530.    "The fact that the agency has from time to time changed its interpretation ...does not...lead us to conclude that no deference should be accorded the agency's interpretation of the statute.  An initial agency interpretation is not instantly carved in stone. On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis." <u>Chevron</u>, 467 U.S. at 863-64;  *see also* <u>In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation</u>, 2006 WL 2374742 (N. D. Cal. Aug. 16, 2006).   In <u>Bextra</u>, the court also noted the change in the FDA position regarding preemption and concluded that such change did not mean that no deference should be given to the FDA's current position.  According to the court in <u>Bextra</u>, "[t]he Supreme Court has recognized than an agency's view of the preemptive effective  of its regulations may change over time as the agency gains more experience with the interrelationship between its regulations and state laws." 2006 WL

---

*the defendant asserted several arguments, including the contention  that the state claim was preempted because of FDA licensing standards.  Although the Circuit affirmed the trial court's finding that the claim was not preempted, the appellate decision focuses primarily on other issues; the decision does not discuss whether the FDA had stated a position regarding preemption, and was decided long before the FDA's current position regarding preemption.  906 F.2d at 1405 n.9.*

2374742, * 8, *citing* <u>Hillsborough</u>, 471 U.S. at 714-15 and <u>Chevron</u>, 467 U.S. at 863-64.   The court also found that the FDA position had been consistent since 2000, a factor noted in <u>Colacicco</u>.   *Id., citing* <u>Colacicco</u>, 432 F. Supp. 2d at 531-532.

In evaluating the degree of deference to be afforded the FDA's current position regarding preemption, the Court should also consider whether that position is "plainly erroneous or inconsistent with the regulation."   <u>Bextra</u>, 2006 WL 2374742, *quoting* <u>Auer</u>, 519 U.S. at 461.   *See also* <u>Skidmore</u>, 323 U.S. at 140.   Moreover, the Court should consider the " thoroughness evident in its consideration" and "the validity in its reasoning."   <u>Skidmore</u>, 323 U.S. at 140.

These factors weigh in favor of affording deference to the FDA's current position as it applies to the facts of this case.   As discussed, *supra*, the Preamble states that the FDA's position is premised on its assertion that "[t]he determination whether labeling revisions are necessary is, in the end, squarely and solely the FDA's under the act."   71 Fed. Reg. at 3934.   The Court finds this position both reasonable and supported by the law.   As discussed, *supra*, the FDA explained in detail in the Preamble the bases for its concerns that state law labeling requirements, or de facto requirements resulting from damages awards,  could lead to a manufacturer's alterations of approved labels for the purpose of avoiding litigation risks, a result which, as fully explained in the Preamble could, in the FDA's opinion, lead to misbranding.   71 Fed. Reg. at 3935.   The FDA further states in the Preamble that state law claims concerning drug labeling "conflict with and stand as an obstacle to achievement of the full objectives and purposes of Federal law...."   *Id.*

Decisions finding that the Preamble does not warrant deference have found the FDA's position unpersuasive because the courts considered the position contrary to the regulations' imposition upon drug manufacturers of a continuing duty to monitor the safety of their products after FDA approval and their ability to change labeling content before seeking FDA approval of those

changes, if they obtain scientific evidence which warrants such changes.  *See* 21 C.F.R. §314.70.

As the FDA points out in the Preamble, however, manufacturers typically contact the FDA to discuss such proposed labeling changes and, if the FDA disagrees with the scientific evidence, the label can ultimately be rejected.   Moreover, the FDA asserts that a manufacturer's ability to change labeling on its own volition without FDA approval concerns previously unknown risks, as opposed to risks that have been analyzed by the FDA.  *See* Brief of the United States as *Amicus Curiae* Supporting Petitioner, Wyeth v. Levine, on Petition for Writ of Certiorari, 2007 WL 4555760, at *7 (Dec. 21, 2007) (No. 06-1249).

The Court finds that, on the particular facts of this case, deference to the relatively broad scope of preemption set forth in the Preamble and *amicus* briefs filed since 2000 is not required because this case presents a narrower issue.   The record establishes that the express type of warning which Plaintiff claims Defendant should have included in its  Effexor label had been considered and rejected by the FDA as not supported by credible evidence at the time Mr. Dobbs used Effexor[6]. Where the FDA has evaluated scientific evidence regarding an alleged risk associated with a drug, has considered whether that evidence warrants a labeling warning, and has expressly rejected the need for such warning as not supported by credible evidence, a state law determination that such a warning is required creates a conflict for the manufacturer as between federal and state law, and imposes  inconsistent federal and state obligations[7].

Several post-Preamble decisions have noted this narrower view of preemption by finding that preemption did not exist where there was no evidence that the FDA had previously considered and

---

[6]*Indeed, the FDA still has not directed the use of a "black box" warning regarding suicidality in adults over the age of 24, as was Mr. Dobbs at the time he used Effexor.*

[7]*In such instances, to avoid the risk of failure-to-warn liability under state law, a manufacturer may be compelled to include a warning which would be directly contrary to  the FDA's rulings, and could give rise to some of the public health dangers discussed in the Preamble.*

23

rejected the label warnings at issue.  *See, e.g.,* <u>Sarli v. Mylan Bertek Pharmaceuticals, Inc.</u>, 2007 WL 2111577, *4 (M.D.N.C.  July 19, 2007) (finding no preemption where the warnings at issue had not been rejected by the FDA or submitted to the FDA for approval; thus, the defendant could not show a conflict in complying with both federal and state law); <u>Perry v. Novartis</u>, 466 F. Supp. 2d 678, 685-86 (E.D. Pa. 2006) ("We believe it is more in keeping with the narrow scope of preemption to allow state law to require the addition of warnings so long as there has been no specific FDA determination as to the sufficiency of the scientific evidence to support a particular warning.").  That distinction was also noted in <u>Tucker v. SmithKline Beecham Corp.</u>, 2007 WL 2726259 ( S. D. Ind. Sept. 19, 2007).  In <u>Tucker</u>, the court considered a claim that the manufacturer should have included in the labeling for the antidepressant Paxil a warning of suicidality.   Because the FDA had considered and expressly rejected the warning as not supported by sufficient evidence, the court found that to require the manufacturer, under state law, to include the warning rejected by the FDA would create conflicting obligations under state and federal law.  *Id.,* *9-10.

If  Plaintiff's failure-to-warn claims in this case are allowed to proceed, Defendant would face the same conflict as that noted in <u>Tucker</u> because the label warning that Plaintiff seeks to require has been considered and rejected by the FDA[8]; therefore, Defendant would face conflicting obligations under Oklahoma and federal law[9].

---

[8]*Contrary to Plaintiff's argument, this view is consistent with the decision in <u>Sprietsma v. Mercury Marine</u>, 537 U.S. 51 (2002), where the Court found no preemption; there was no conflict in state and federal regulations because the Coast Guard had chosen not to adopt a regulation requiring propeller guards on motorboats.  As a result, state regulations were not preempted because there was no conflict in complying with both state and federal law.537 U.S. 51, 65.   The Court added, however, that "if a state common-law directly conflicted with a federal regulation...or if it were impossible to comply with any such regulation without incurring liability under state common law, pre-emption would occur."  Id.*

[9]*Plaintiff further argues that the Court cannot give deference to the FDA's statement of preemption in such cases because, after <u>Tucker</u> was decided, Congress enacted amendments to underlying statutes which, in pertinent part, gave the FDA additional authority to compel labeling changes for prescription drugs.  Section 901 of the legislation also includes a "Rule of Construction" which provides in  part that the new amendment "shall not be construed to affect the responsibility of the responsible person or the holder of the approved application under section 505(j) to maintain its label in accordance with existing requirements, including ...sections 314.70 and 601.12 of title 21, Code of Federal*

IV. Conclusion:

In accordance with the foregoing, the Court concludes that, under the specific facts and circumstances of this case, Plaintiff's state law failure-to-warn claims are preempted by the applicable FDA regulations governing labeling of prescription drugs.  Accordingly, Defendant's motion for partial summary judgment [Doc. No. 113] on the issue of preemption is  GRANTED. Having reached that conclusion, the Court need not address Defendant's alternative summary judgment argument.

IT IS SO ORDERED this 17th day of January, 2008.


_____

TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

---

*Regulations (or any successor regulations)."  Plaintiff contends that, because 21 C. F. R.  § 314.70 is the federal regulation that authorizes a drug manufacturer to alter its warnings without prior FDA approval, the rule of construction must be considered a statement of Congressional intent that the FDA regulations do not preempt state law. The Court disagrees.  As discussed herein, the fact that the manufacturer may alter its labeling cannot be properly construed as requiring the manufacturer to do so where the FDA has expressly rejected the evidence underlying the basis for the alteration.*